IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GEORGE HENRY RHODES, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 1:06-cv-305-WHA |
| | ) |
| **HOUSTON COUNTY COMMISSIONERS,** | ) |
| et al., | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority for administering oaths, personally appeared **Darla Jane Speigner**, who is a Registered Nurse and is also a Certified Nurse Practitioner and is employed as one of four nurses for purposes of rendering medical services and treatment for inmates at the Houston County Jail, who being by me first duly sworn, deposes and says as follows:

I am Darla Jane Speigner. I am a Certified Registered Nurse Practitioner (CRNP) in the State of Alabama and I am one of four full time nurses working in the Houston County Jail.

Unless otherwise indicated expressly or by the context herein, I have personal knowledge of the facts and information contained herein. I make this affidavit after review of the subject matter and a review of the Plaintiff's Houston County Jail inmate medical file, which includes records from

Southeast Alabama Medical Center in an attempt to address the allegations of Plaintiff in this case.

In addition to funding four full time nurse positions (one of which is a Certified Registered Nurse Practitioner), a doctor contracted as the staff doctor and a registered supervising pharmacist for the provision of medical care to inmates such as the plaintiff, the County Jail provides a general medical clinic for medical problems that may arise in the jail. The medical clinic is held daily, Monday through Friday. The clinic is staffed by the staff physician and/or the Certified Registered Nurse Practitioner under the supervision of the physician. The nurses are in the Pods each day passing out inmate medications as well. Thus, inmates are given daily access to nursing services, hospital emergency room services, if necessary, and the general medical clinic. In addition, the nurses who work at the jail carry southern linc radio telephones and alternate being "on call" so there is generally a nurse available "on call" to the jail on a 24 hour a day, seven days a week, basis.

It is the policy of the Houston County Jail that all requests for medical treatment are forwarded to one of the nurses on duty with the expectation that appropriate and necessary medical treatment will be provided to or obtained for the inmate.

When the plaintiff was admitted to the jail, he was screened by jail staff. According to the jail's intake form at the time the plaintiff was incarcerated in the jail, he complained of a history of heart and blood pressure problems.

Shortly thereafter, the plaintiff was seen in the jail medical clinic for medical and physical evaluation as a part of the jail's medical intake process.

Since his incarceration the plaintiff has been seen numerous times by the jail medical staff. summary of the medical treatment provided to the plaintiff is summarized as follows:

On May 2, 2005, the plaintiff was seen in the jail medical clinic for evaluation as a part of the medical intake procedures of the jail for recently incarcerated inmates. During this process the plaintiff related a medical history of hypertension (high blood pressure) problems since 1998; problems with angina and heart palpitations since 1998 and that Dr. Pinson was his cardiologist. Order was entered to request copies of Dr. Pinson's records related to plaintiff's cardiovascular problems so that proper treatment could be rendered to the plaintiff while in the jail.

On May 5, 2005, the jail medical staff submitted a written request for Dr. Pinson's records was faxed to Dr. Pinson's office.

On June 15, 2005, the plaintiff was seen in the jail medical clinic for treatment related to heart problems and was provided medications for angina and heart palpitations..

On September 9, 2005, plaintiff was seen in the jail medical clinic for evaluation and to have his blood pressure checked by the medical staff of the jail.

On October 17, 2005, plaintiff was seen in the jail medical clinic for evaluation and to have his blood pressure checked by the medical staff of the jail.

On November 3, 2005, the plaintiff was seen in the jail medical clinic for evaluation and for a check of his heart.

On November 4, 2005, the plaintiff was seen in the jail medical clinic to have his heart checked again.

On Saturday, February 18, 2006, for the first time, the plaintiff writes a request claiming that he fell in the shower on February 11, 2006, while taking a shower and injured his right hip which is now swollen and causing him pain.

On Monday, February 20, 2006, the plaintiff was scheduled to be seen in the jail medical clinic by the medical staff during the regular jail medical clinic on February 22, 2006.

On Wednesday, February 22, 2006, the plaintiff was seen in the jail medical clinic and reported to the medical staff of the jail that on February 11, 2006, he slipped in the shower but caught himself with his left hand but that he did hit his right knee. Upon evaluation by the jail medical staff, the jail medical staff noted some swelling in his right thigh when it was compared to his left thigh. The plaintiff was provided medical treatment and medication for his complaint of pain.

On April 4, 2006, the plaintiff was seen in the jail medical clinic for complaint of back pain. During evaluation, it was discovered that the plaintiff's right thigh was swollen but was reported by the plaintiff as not tender to touch. The plaintiff at that time reported that the swelling of his leg began with his alleged fall in the shower area of the jail on February 11, 2006. The plaintiff was sent to the Southeast Alabama Medical Center to have an x-ray of his leg done on April 4, 2006.

April 5, 2006, the plaintiff's x-ray report was received and read to indicate that there was indeterminate calcification in the soft tissue of the plaintiff's right upper thigh with no fracture noted. The radiologist also recommended on the report that an MRI be performed for further evaluation to exclude malignancy. The plaintiff was seen in the jail medical clinic that day and was referred by the nurse practitioner to the doctor who is the medical director for the jail.

April 11, 2006, the plaintiff was seen in the jail medical clinic for leg pain that the plaintiff claimed was caused by his having slipped on the floor in the shower February 11, 2006. The plaintiff was seen by both a nurse practitioner and doctor for evaluation. The plaintiff's cell

assignment was changed to M-Pod which is where inmates with health problems are housed to be closer to the medical clinic so that their medical conditions can be more closely monitored.

The plaintiff was scheduled to have an MRI done at the Southeast Alabama Medical Center on April 28, 2006. On April 28, 2006, plaintiff was seen in the jail medical clinic and then transported to the Southeast Alabama Medical Center to have an MRI of his right leg performed.

On May 10, 2006, the plaintiff was seen in the jail medical clinic and was transported to the Southeast Alabama Medical Center for MRI testing of his right lower extremity. After his return to the jail, the plaintiff was also seen in the jail medical clinic during sick call.

On May 11, 2006, the plaintiff was seen in the jail medical clinic by the doctor who reviewed the plaintiff's MRI results with the plaintiff and referred the plaintiff to an orthopedic surgeon.

After the MRI test results were reviewed with the plaintiff, Dr. Banner, the medical director for the jail, consulted with a local orthopedic surgeon relative to same. The orthopedic surgeon, Dr. Granger, recommended that a CAT scan guided biopsy of the mass in plaintiff's right leg should be performed as a precautionary measure

Attempts to get one of the local radiologists to perform a CAT scan guided biopsy of the plaintiff's right thigh were made. All of the local radiologists refused to do the procedure. As a result the jail medical staff requested that Dr. Granger the local orthopedic surgeon try to contact the University of Alabama in Birmingham (UAB) hospital to see if the procedure could be scheduled. Dr. Granger scheduled the procedure. Dr. Granger's office set up the appointment at the UAB Medical Center

On June 14, 2006, the medical staff of the jail medical clinic contacted UAB medical center

and talked to the nurse practitioner for the doctor who was to perform the CAT scan guided biopsy who wanted the jail staff to obtain the plaintiff's hospital and doctor records on computer disc and send them to the doctor at UAB. The medical staff obtained a disc of said records and overnighted them to the doctor at UAB for evaluation.

On June 15, 2006, the nurse practitioner for the doctor at UAB called the jail medical staff and informed them that the plaintiff could have a serious medical condition but the doctor at UAB did not deem it necessary to move the plaintiff's biopsy date up leaving it scheduled for Tuesday, June 20, 2006.

On June 16, 2006, the jail medical staff again contacted the nurse practitioner for the doctor at UAB medical center who indicated that if the mass is cancer there is a risk that it will metastasize.

On June 20, 2006, the plaintiff was seen in the jail medical clinic and caused to be transported to UAB Medical Center in Birmingham for the CAT scan guided biopsy. After the procedure was performed, the nurse practitioner for the doctor at UAB called to report that the plaintiff had come through the procedure fine and was being returned to the jail that day and that the plaintiff had a mild fever due to the test which was normal. Upon the plaintiff's return to the jail, he was seen in the jail medical clinic the evening of June 20, 2006, was evaluated and was found to have a fever. The jail medical staff gave the plaintiff his pain medicine; gave him extra strength tylenol for his fever; ordered that the plaintiff be put on medical watch for the night and be housed in the docket area of the jail for observation.

On June 21, 2006, the plaintiff was seen and evaluated by the jail medical staff in the jail medical clinic where he was found to no longer have an elevated fever. Precautionary blood work

was ordered and performed on the plaintiff and the plaintiff was ordered returned to his cell in the medical pod. After further consultation with the nurse practitioner for the doctor at the UAB Medical Center, orders were written for the plaintiff to have a CAT scan of his lungs and head.

On June 22, 2006, the plaintiff was seen by the jail medical staff in the jail medical clinic and was then transported to the Southeast Alabama Medical Center for CAT scans of his lungs and head. Also, at the direction of the jail medical clinic doctor, the plaintiff has been scheduled for a full body CAT scan at the Southeast Alabama Medical Center next week the exact date of which is not provided as a security precaution. Inmates are not informed of the time and place of any out of jail testing or treatment until the day it is scheduled as a matter of jail security.

The jail medical staff is committed to providing needed medical treatment to every inmate even when the inmate is manipulative, abusive or does not cooperate in his treatment. The jail medical staff makes medical decisions based on medical needs, not the desires of the inmate.

Based on my treatment to the plaintiff and my review of the plaintiff's jail medical file, the plaintiff was, during the period of time made the basis of Plaintiff's complaint, provided all necessary medical testing, treatment and care while in the Houston County Jail. At all times alleged in Plaintiff's Complaint, he has been given and provided adequate and necessary medical treatment and has at all times relevant thereto been provided with all medically necessary medications. While in the jail, the plaintiff has been seen almost every day by one or more of the nurses in the jail including myself as the Certified Registered Nurse Practitioner or by one of the other members of the jail medical staff.

I am one of the custodians of records of inmate medical records in the Houston County Jail.

A true and correct copy of plaintiff's jail medical file relative to this case, as maintained by the jail in the ordinary course of its operations as a county jail, is attached hereto as **Exhibit "A"** and is incorporated herein by reference as if fully set forth.

For more detail relative to the medical treatment rendered to the plaintiff, please refer to the copy of his jail medical file which is attached hereto as **Exhibit "A"**.

_____
DARLA JANE SPEIGNER

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me the undersigned authority, personally appeared **Darla Jane Speigner**, who being sworn by me according to law, deposes and states that the matters and things alleged in the above Affidavit are true and correct to the best of her information, knowledge and belief.

Sworn to and subscribed before me on this the 23rd day of June, 2006.

_____
NOTARY PUBLIC
My Commission Expires: 12-9-2008